WILBER E. SKINNER v. JAMES C. DAVIS, Director-General of Railroads, Etc., Appellant.

Division Two, January 23, 1926.

1. **NEGLIGENCE: War Risk Act: Soldier: Acceptance and Retention of Compensation from Goverment.** If a soldier accepted compensation from the Government under the War Risk Act of Congress, for injuries received by him while a passenger on a railroad under the control of the Director-General of Railroads, and retained such compensation, he cannot again recover for the same injuries in a suit against the Director-General; but the acts of Congress are not exclusive, and he may pursue either remedy. He may sue the Director-General for negligently injuring him, and if successful receive compensation from the Government; but if he has accepted

Skinner v. Davis.

and retained compensation without a suit, he cannot subsequently maintain an action for the same injuries.

2. ———: ———: Retrospective Operation. Circular No. 4, issued by the General Counsel and approved by the Director-General of Railroads, remitting men enlisted in the Army to the War Risk Bureau for compensation for injuries received while in active service, has no application to a soldier who was injured before its issuance. Even if it had the force of an act of Congress (which is denied) it could not operate retroactively, so as to destroy an existing vested right to sue.

3. ———: Injury to Soldier in Transit: Application to Veterans' Bureau for Compensation: Return: Estoppel. Plaintiff having been injured while being transported on a train under the control of the Director-General of Railroads, his election to take compensation under the War Risk Insurance Act was not irrevocable; but having made application for compensation and received a small sum, and later returned it for the stated purpose of enabling him to bring suit against the Director-General and the amount having been accepted by the Veterans' Bureau with the understanding that such was the purpose of the return, his suit for damages against the Director-General subsequently brought is maintainable. He had two consistent remedies, and his restitution of the small amount paid, and its acceptance by the bureau with complete understanding of the purpose of its return, restored the *status quo ante*, and he was not estopped by the facts to maintain his suit.

4. ———: ———: ———: Refund: Authority of Government Agent to Accept. In the absence of any showing to the contrary, it will be presumed that the Bureau of War Risk Insurance, in accepting a return of the small amount of money paid to an enlisted soldier as compensation for injuries received in transportation, after having been informed that the purpose was that he might bring suit for damages against the Director-General of Railroads, acted regularly and within the purview of authority, especially where the letter acknowledging receipt and the receipt itself were on official forms, and the statute said that the bureau "with the approval of the Secretary of the Treasury shall have power to make all rules and regulations necessary for carrying out the purposes of this act."

5. ———: Injury to Soldier: Compensation: Vocational Training. An enlisted man in the Army who was injured by the collision of trains while he was being transported from one part of the country to another, was given the right by the Federal Control Act to prosecute an action for damages against the Director-General of Railroads, and that right was not destroyed by the Vocational Rehabili-

Skinner v. Davis.

tation Act and his acceptance of vocational training and maintenance thereunder. The latter act manifests no intention to exclude him from the benefit of the former, and it is a fair presumption that if Congress intended by the latter act to repeal so much of the former as gave him the right to sue for damages it would have said so in express words or have brought them into irreconcilable conflict by necessary implication. The relief given by the Vocational Training Act is in the nature of a gratuity, and was not meant to be compensation.

6. ———: **Excessive Verdict: Twenty Thousand Dollars.** Plaintiff was injured by the collision of the train on which he was a passenger with a freight train. He was twenty-one years of age, in robust health and belonged to a troop of soldiers who were being transported from a training camp to a seaport for embarkation for overseas service. He suffered a compound fracture of the tibia and fibula, and a fracture of the bone of the knee-joint; the ligaments binding the knee-joint were torn loose, and the joint is weak and insecure; there is almost complete ankylosis of the ankle and foot; both knees were injured; the bones in the right leg were set three different times, and there is a general atrophy of that leg, and it is shortened about an inch between the knee and ankle; he was in different hospitals for fourteen months; there is an excessive nervous tension, and the injuries are permanent. *Held*, that a verdict for $20,000, approved by the trial court, while large, is not excessive.

Army and Navy, 5 C. J., Sections 119a, 119b, p. 340, n. 97 New. Damages, 17 C. J., Section 408, p. 1091, n. 85. Election of Remedies, 20 C. J., Section 8, p. 11, n. 78, 79, 80, 81. Evidence, 22 C. J., Section 70, p. 138, n. 32. Railroads, 33 Cyc., p. 45, n. 36. Statutes, 36 Cyc., p. 1071, n. 25; p. 1072, n. 26, 28; p. 1074, n. 37; p. 1076, n. 39; p. 1122, n. 48; p. 1151, n. 55.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*W. F. Evans, Guthrie & Conrad* and *Hale Houts* for appellant.

(1) The action is against the Government of the United States and cannot be maintained without the Government's consent. Mo. Pac. R. Co. v. Ault, 256 U. S. 554. (2) The War Risk and Vocational Training Acts constituted an exclusive remedy to plaintiff. 38 Stat. 711, ch. 293; 41 Stat. 158, ch. 12; Mason v. Hines, 87 So. 603; Sidel v. Director General, 89 So. 308; Sandoval v. Davis,

278 Fed. 968. (3) Plaintiff's action was barred by Circular No. 4. 40 Stat. 451, ch. 25; Alabama Ry. Co. v. Journey, 257 U. S. 111; Mo. Pac. Ry. Co. v. Ault, 256 U. S. 544; Preston v. U. P. Ry. Co., 239 S. W. 1084; Sandoval v. Davis, 278 Fed. 971. (4) The court should have directed a verdict for defendant because of plaintiff's application for and acceptance of compensation. (a) His election to take compensation barred this action. 38 Stat. 711, ch. 293; 39 Stat. 742; Dahn v. Davis, 258 U. S. 421; Sandoval v. Davis, 288 Fed. 66; Sandoval v. Davis, 78 Fed. 968; 42 Stat. 147, ch. 57. (b) Plaintiff was not relieved of his election by reason of the tender made to and accepted by the Veterans' Bureau, since there is no provision of law for tender or authorizing the Veterans' Bureau to receive or accept tender. State ex rel. v. Hayes, 52 Mo. 580; Pierce v. United States, 7 Wall. 666; Whiteside v. United States, 93 U. S. 447; People v. Phoenix Bank, 24 Wend. (N. Y.) 431. (5) Acceptance of vocational training by plaintiff constituted an election by him which barred this action. 41 Stat. 158, ch. 12; Cases cited under (a) supra. (6) The verdict was excessive. Fitzsimmons v. Mo. Pac. Ry. Co., 294 Mo. 579; Hanson v. Kansas City, 277 Mo. 443; Rogles v. United Rys., 232 S. W. 98; Rigg v. Railroad, 212 S. W. 880; Parles v. United Rys., 239 S. W. 1057.

*Hogsett & Boyle* for respondent.

(1) The Government has consented to be sued in connection with its operation of the carriers by all persons who might have sued the carriers themselves if they had not been under Federal control. Federal Control Act, 40 Stat. 451, 456, sec. 10; Mo. Pac. Ry. Co. v. Ault, 256 U. S. 554; Director General v. Kastenbaum, 263 U. S. 25; Transportation Act 1920, 41 Stat. 461, sec. 206. (2) The rights given to soldiers under the Federal Control and Transportation Acts are not affected by the War Risk Insurance and Vocational Rehabilitation Acts and the latter acts do not provide an exclusive remedy (or indeed any rem-

edy at all in a proper sense of that term) for a soldier injured by a tort committed by a carrier under Federal control. Dahn v. Davis, 258 U. S. 421; Midwest National Bk. & Trust Co. v. Davis, 233 S. W. 406. (3) Plaintiff's action is not barred by Circular Number Four. (a) This circular is not a public document but merely a private inter-departmental order fixing an inter-departmental policy. (b) The circular does not attempt to take away the right of an injured soldier to sue the Director-General. (c) The circular has no retroactive effect. Bryson v. Hines, 268 Fed. 298; U. S. F. & G. Co. v. United States to use, 209 U. S. 314. (d) Congress could not delegate to the President or the Director-General the power to take away a right of action, because such a power is a legislative power, and Congress cannot delegate its legislative powers. Sec. 1, Art. I, Constitution of United States; Stanley v. Schwalby, 162 U. S. 255; Field v. Clark, 143 U. S. 692; Hurwitz v. United States, 280 Fed. 111; Morrill v. Jones, 106 U. S. 466; United States v. Eaton, 144 U. S. 677; Stratton v. Oceanic Steamship Co., 140 Fed. 829; United States v. Hoover, 133 Fed. 950; United States v. Moody, 164 Fed. 269; United States v. Grimaud, 220 U. S. 506; United States v. United Verde Copper Co., 196 U. S. 207; United States v. 11,150 Pounds of Butter, 195 Fed. 657; St. Louis Packing Co. v. Houston, 215 Fed. 553; United States v. Symonds, 120 U. S. 49; Williamson v. United States, 207 U. S. 425; Leecy v. United States, 190 Fed. 289. (e) Plaintiff's cause of action had already accrued at the time this circular was issued and an attempt to take it away would deprive him of property without due process of law in violation of the Fifth Amendment of the Constitution of the United States. (f) Any rights taken from plaintiff by Circular No. 4 were restored by the Transportation Act of 1920. 41 Stat. 461. (4) Plaintiff's acceptance of compensation constitutes no bar to this action. (a) The doctrine of election of remedies has no application to this case. 20 C. J. 6, par. 7; Reynolds v. Union Station Bank, 198 Mo. App. 323; Zimmerman v. Harding, 227 U. S. 493; Steinbach v. Murphy, 143 Mo.

App: 537; Kaplan v. Myers, 241 Fed. 459; Sweet v. Bank, 69 Kan. 641. That doctrine has application only where two or more remedies are provided which are inconsistent. The provisions of the War Risk Insurance Act and the Federal Control Act are different, but not inconsistent. Authorities supra; 20 C. J. pp. 11, 12, 14; Sec. 300, War Risk Insurance Act as amended, 40 Stat. 405, 41 Stat. 373, 42 Stat. 153. Even if it be said that these acts afforded plaintiff two remedies (which we deny), the remedies are not inconsistent; and this being true, it is not the pursuing of the remedy but the satisfaction of the claim, which constitutes the bar; and when the money received in satisfaction is tendered back and accepted, the bar is removed. 20 C. J. p. 6, par. 7; Sweet v. Bank, 69 Kan. 641; Weber v. Railway Co., 278 Fed. 258. (b) The Director of the Veterans' Bureau had full authority to accept the tender made by the plaintiff. 42 Stat. 148; Silberschein v. United States, 45 Sup. Ct. Rep. 69; United States v. Hughes, 11 How. 552; Wells v. Nickles, 104 U. S. 444; In re Neagle, 39 Fed. 863, 1. c. 851; United States v. Mac-Daniel, 7 Pet. 14; Osborne v. U. S. Bank, 9 Wheat. 865; United States v. San Jacinto Tin Co., 125 U. S. 278. (c) Plaintiff could maintain this action even though he had not tendered back the compensation he received, because the payments provided in the War Risk Insurance Act are pure gratuities designed to take the place of pensions under former laws. Silberschein v. United States, 45 Sup. Ct. Rep. 69; United States v. Hall, 98 U. S. 343; Frisbie v. United States, 157 U. S. 160; Sec. 312, War Risk Insurance Act, 40 Stat. 613; Sec. 301, War Risk Insurance Act, 41 Stat. 371; Par. 10, sec. 302, War Risk Insurance Act, 41 Stat. 371, 374; Sec. 300, War Risk Insurance Act, 42 Stat. 147, 148; Secs. 8933, 8934, U. S. Comp. Stat. 1916; Cunnien v. Superior Iron Works Co., 184 N. W. 767. (5) The acceptance by plaintiff of benefits under the Vocational Rehabilitation Act constitutes no bar to this action. Such benefits are likewise gratiuties. See authorities supra, 40 Stat. 617; 41 Stat. 158.

HIGBEE, C.—The statement by appellant's counsel is as follows:

"Referring to the parties as they appeared in the trial court, plaintiff sued defendant, Director-General of Railroads, as agent, and also the St. Louis-San Francisco Railway Company, for personal injuries received by him in a train wreck on the corporation's line of railroad near Marshfield, Missouri, on September 17, 1918, while the line was under Federal control and operated by the Director-General of Railroads. Prior to the trial the cause was dismissed as to the corporation, leaving the Director-General of Railroads, as agent, sole defendant. There was a verdict and judgment for ten thousand dollars [this should read $20,000] and, following the overruling of his motion for a new trial, defendant appealed.

"The train on which plaintiff was riding was transporting troops from a training camp in Texas to Camp Merritt, New Jersey, which was a port of embarkation for overseas service. The wreck was caused by the collision of the troop train with a freight train.

"Plaintiff's petition alleges that he was a soldier, as aforesaid, and a passenger upon the train in question; that the train was operated by the Director-General of Railroads and that through the negligence of defendant and his employees, the train was suffered and permitted to come into collision with the freight train, thereby injuring plaintiff as set out in some detail.

"(1) Defendant's answer set up that the acts of Congress, known as War Risk Insurance Act and Vocational Rehabilitation Act, with their various amendments, constituted an exclusive remedy to plaintiff for the injuries he sustained.

"(2) That plaintiff was precluded from bringing any action against the Director-General of Railroads by Circular Number 4, issued by William G. McAdoo, Director-General, John Barton Payne, General Counsel of the Director-General, and by the President of the United States, through the Director-General and General Coun-

sel, which provided that no claims should be brought against or entertained by the Director-General of Railroads or Railroad Administration for injuries to soldiers of the United States employed in the active service, remitting soldiers so employed to remedy under the War Risk Insurance Act.

"(3) That plaintiff had applied for, had been awarded, and had accepted compensation under the War Risk Insurance Act, and also vocational training, support, compensation and maintenance under the Vocational Rehabilitation Act on account of the injuries which he received, and that by reason of such facts he was precluded from maintaining the action.

"Plaintiff by reply denied that the acts of Congress in question constituted exclusive remedies, admitted the issuance of Circular Number 4 by General Counsel for the Director-General of Railroads, and set up that it was issued after the accrual of plaintiff's cause of action; denied the right of the President of the United States, Director-General of Railroads or his General Counsel to promulgate the circular. The reply admitted the receipt from the Government of the compensation in the sum of some six hundred dollars [this should read $13.50], and set up that plaintiff applied for and received it under advice that such action would not interfere with the prosecution of a suit against Director-General of Railroads; that at a time after bringing suit he tendered back the same to the Government and his tender had been accepted and he had thereby been placed in the same position that he occupied before applying for and receiving the compensation. The reply further admitted receipt by the plaintiff of vocational training, support and maintenance, but denied that plaintiff was thereby precluded from maintaining the action in question.

"The wreck occurred about eight o'clock in the evening. Plaintiff was riding on a Tourist Pullman, which was the first car back of engine.

"Plaintiff was making preparation for going to bed.

Skinner v. Davis.

"Plaintiff was rendered unconscious by the collision, but regained consciousness while at the scene of the wreck, and was taken to what is known as the Frisco Hospital at Springfield, Missouri, a few miles from the point at which the wreck occurred.

"Plaintiff remained in hospital at Springfield for about ten days, and was then taken, with others who were injured, to the Government Hospital at Fort Des Moines, Iowa, where he remained some twelve months.

"Following his discharge he applied for and received compensation under the War Risk Insurance Act; the amount received was only $13.50, due to the fact that compensation was refunded by vocational training. April 18, 1921, this suit was brought. Thereafter and on September 17th, plaintiff, by letter, tendered to the United States Veterans Bureau at Washington, D. C., the amount of the compensation which he had received under the War Risk Insurance Act. The Veterans Bureau, by letter, November 1, 1921, acknowledged receipt of the amount of compensation received by him and advised him that his award was automatically closed. The evidence above referred to in respect to the return of the amount of compensation and correspondence in respect thereto between plaintiff and Veterans Bureau was admitted over defendant's objection on the ground that no tender or acceptance of tender was authorized by law and no tender was binding upon defendant.

"Soon after plaintiff had begun to receive compensation he applied to the Government for vocational training, which was allowed him and which he began to receive in January, 1920. When he began vocational training the installments of compensation under the War Risk Insurance Act automatically ceased, as he understood would be the case, but were subject to be re-instated at the completion of vocational training. The training consisted of a teacher's agricultural course at Ft. Collins, Colo. The Government supplied books and tuition of the value of about $40 a year and maintenance at the rate of $100 a month. At the time of trial he had received

about $2,500 in connection with his vocational training, and was to receive the further sum of about $1200. . ·

"The evidence as to injuries will be set out in detail in the argument in connection with the contention that the verdict was excessive.

"At the close of the evidence defendant offered a general instruction ('B') for a directed verdict, and also instructions for directed verdict on specific grounds, to-wit: 'C', that the War Risk Act and the Vocational Rehabilitation Act constituted exclusive remedies; 'D', that Circular No. 4 barred recovery; 'E', that plaintiff was precluded from recovery by reason of his application for and the payment to him of compensation by the Government under the War Risk Act; 'F' that he was precluded from recovery by reason of application for and acceptance of compensation under the War Risk Act and his acceptance of vocational training, maintenance and support from the Government under the Vocational Training Act; and 'G', that by reason of his acceptance of vocational training, maintenance and support, he was precluded from recovery.

"The requests for directed verdict were refused and the case submitted to the jury. Plaintiffs' instructions advised the jury, among other things, that the receipt of compensation would not bar recovery if they should find that plaintiff tendered the same back to the Government and the Government had accepted the tender, and that the receipt of the vocational training, maintenance and support was not a bar. Instruction 5 directed the jury to take into consideration in assessing damages the amounts which they should find plaintiff had received and would with reasonable certainty receive from the Government in vocational training, maintenance and support."

I. Plaintiff was twenty-one years of age and had just passed a physical examination at the time of his injury. The coach in which he was riding was demolished, and he was pinned under the wreckage. He suffered a compound comminuted fracture of the tibia and

fibula and a fracture of the bone in the knee-joint of the right leg. The crucial ligaments binding the knee-joint were torn loose from their fastenings, leaving a weak, insecure joint. There is a bowing of the tibia (shin bone) where the fracture has healed and the fibula at the knee-joint is half an inch out of place. There is almost complete ankylosis of the ankle and foot. There are scars along the front of the leg adherent to the shin bone which are a source of pain, over which plaintiff wears a pad. The tendon of Achilles was cut to let down the heel. Plaintiff can walk but little and that with the aid of a cane. He received an injury to the other knee which left it stiff for a few months. The bones in the right leg were set three different times. This leg was suspended in a Balcom frame for several weeks with ten drainage tubes and discharged so much pus that for a while the bed clothing had to be changed four times a day. He was in different hospitals for about fourteen months and suffered much pain. There is general atrophy of the leg and foot and the leg is shortened about an inch from the knee to the ankle. The injuries are permanent.

Dr. Skoog, a specialist in nervous and mental diseases, testified at the trial four years after the accident: ''After listening to the story of the patient I had him remove all of his clothing, and examined him particularly for the nervous disorders. I found that he had a strikingly difficult gait, which was largely due to the injury to the leg, the old fractures there, the right side. His nervous system, I found all of his reflexes increased tremendously, and increased about the same on the two sides. I found no paralysis of sensation of any form, but he was excessively sensitive everywhere in the body. There were some tremors present, a little disturbance of coordination, especially among the cranial nerves, those of the head. I found some changes on the ground, that is, the back part of the eye, which shows a passive hyperemia; blurring of the disc-passive hyperemia means increase in the size and choking up of the veins—that was about the same, the two sides of the eyes. Q. Doc-

tor, what did these various conditions that you found in this man indicate, if they indicated anything, with reference to his general nervous condition at this time? A. It indicated that there was an excessive nervous tension, that he was excessively hypersensitive.'' The Doctor further expressed the opinion that the condition of respondent was most likely to be permanent.

The question to be considered arises on the refusal of appellant's instruction for the directed verdict. In-

Concurrent Remedies. struction C is that the War Risk and the Vocational Rehabilitation Act constituted exclusive remedies.

In Dahn v. Davis, 258 U. S. 421, plaintiff, a railway mail clerk, sued the Director-General for injuries received in the course of his employment on the line of the Illinois Central Railroad. He applied for, received and retained compensation under the Federal Employees Compensation Act. On page 428, the court said:

''It was definitely held in Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554, that, at all of the times here involved, Section 10 of the Federal Control Act permitted the Government, through its Director-General of Railroads, to be sued for any injury negligently caused on any line of railway in his custody, precisely as a common carrier corporation operating such road might have been sued, and that recovery, if any, would be from the United States.

''Thus, plainly the petitioner had the right to sue the Director-General of Railroads for negligently injuring him, and if successful his recovery must have been from the United States.

''The Federal Employees' Compensation Act, approved September 7, 1916, c. 458, 39 Stat. 742, provides that the United States shall thereafter pay, as therein specified, for the disability or death of any government employee resulting from personal injury sustained while in the performance of his duty. The act provides for a commission to investigate claims and to make awards, but no compensation may be allowed to any person un-

less he, or some one in his behalf, shall make written claim therefor. Thus, the petitioner, injured, as he was, while in the performance of his duty, was entitled to compensation under the act upon making claim for it.

"This reference to the two acts shows that the petitioner had two remedies, each for the same wrong, and both against the United States, and, therefore, the question for decision takes the form, May the petitioner, after having pursued one of his remedies to a conclusion and payment, pursue the other for a second satisfaction of the same wrong against the Government?"

On page 432, the court further said: ". . . and it is impossible for us to conclude that Congress intended by the enactment of the latter law (the Federal Control Act) to allow an employee to claim and receive the compensation specially provided for. him under the former and then, *while enjoying that benefit,* to institute suit against the Government under the Federal Control Act, which might require it to make further payment for the same injury . . ." (Our italics.)

Our court, in banc, held in Midwest Nat. Bank v. Davis, 233 S. W. 406, that the remedy under the Federal Employees' Compensation Act is not exclusive so as to preclude an action under the Federal Employers' Liability Act. They are concurrent, consistent remedies. We entirely agree with appellant's counsel that the War Risk Act and the Employees' Compensation Act are upon the same basis and that if plaintiff accepted and retained compensation under the War Risk Act, the ruling in the Dahn case would preclude a recovery in the present action.

II. Instruction D is that Circular No. 4 barred recovery. This circular, issued October 25, 1918 (after plaintiff's injury), by John Barton Payne, General Counsel, and approved by W. G. McAdoo, Director-General of Railroads, after referring to the War Risk Act as an act

312 Mo. Sup.—38.

Circular No. 4. to establish a system for compensating officers and enlisted men, etc., when employed in active service, proceeds: "Such injured officers and enlisted men and members of the army and navy nurse corps (female) will be remitted to their claims for compensation through the War Risk Bureau and will not receive any payment through the railroad administration."

In Bryson v. Hines, 268 Fed. 1. c. 295, 11 A. L. R. 1438, 1443, the court said:

"We do not discuss the question whether Circular 4, issued by the Director-General, had the force of an act of Congress, withdrawing the grant of permission to sue him, for the reason that if the Director-General had such power and exercised it, we do not think he expressed in the circular the intention that it should have the retroactive effect of destroying rights of action which had already accrued. Statutes are never construed to act retrospectively, unless the legislative effect is clearly expressed or clearly implied. When retrospective operation of the statute would result in injustice the presumption against such legislative intent is still stronger. [Citing United States v. Burr, 159 U. S. 78; United States v. Am. Sugar Ref. Co., 202 U. S. 577; 36 Cyc. 1205.] There is nothing in the circulars to indicate that it was intended to apply to injuries and deaths of soldiers which already had been inflicted, and it would have been a manifest hardship to take away the right of action from soldiers who at the time of boarding the train and incurring the risk had the statutory assurance of the protection of liability of the Director-General for death or injuries due to the negligent operation of the train."

See also U. S. F. & G. Co. v. United States to use, 209 U. S. 306, 314.

Morever, Section I of Article I of the Constitution of the United States provides: "All legislative powers herein granted shall be vested in a Congress of the United States which shall consist of a Senate and a House of Representatives." The question was elaborately considered in Fields v. Clark, 143 U. S. 694, and it was said:

"That Congress cannot delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." See United States v. Grimaud, 220 U. S. 506, 31 S. C. 481.

We think it clear that plaintiff had a vested right to prosecute this action unaffected by Circular No. 4.

III. Instruction E is that plaintiff was precluded from recovery by reason of his application for and the payment to him of compensation by the Government under the War Risk Act. In appellant's reply brief it is stated that the $13.50 which had been received by plaintiff under the War Risk was returned *"for the stated purpose of enabling plaintiff to bring suit against the Director-General of the Railroads and was accepted with this understanding on the part of the Veterans' Bureau."* This statement is italicized in the brief that its importance may not be overlooked. In other words, the Veterans' Bureau appreciated the fact that plaintiff had a vested right to prosecute this action to recover compensation for his injuries and was not unwilling to receive back the trifle that had been paid him under the Compensation Act that it might not embarrass him in the prosecution of this action, which was authorized by the Federal Control Act as a concurrent remedy.

Estoppel.

The Bureau of War Risk Insurance wrote the plaintiff:

"Receipt is hereby acknowledged of your money order for $13.50 covering refund in full of all Compensation paid you by the U. S. Veterans' Bureau.

"As you have now reimbursed the Government in full of all amounts paid you as Compensation, your award is automatically closed.

"It is noted that you have returned all Compensation paid you because you had not understood your rights at the time you first claimed compensation from this bureau."

Inclosed with this letter was an official receipt on "Form 1149" for the amount $13.50. It will be noted that the bureau accepted the return of all compensation which had been paid plaintiff "because you had not understood your rights at the time you first claimed compensation from the bureau."

Appellant's contention is that plaintiff's *election* to take compensation under the War Risk Insurance Act was a final and irrevocable election of remedies precluding his right to prosecute an action against the carrier under the Federal Control Act; that such election was not disaffirmed by the restitution and acceptance of the sum paid nor did such repayment restore the *status quo ante.*

The remedies are consistent. The doctrine "that the pursuit of one remedy excludes the pursuit of another applies only to those cases in which the party has two remedies which are inconsistent with each other, and has no application to a state of facts where a party may have the right to bring more than one suit." [Reynolds v. Union Station Bank, 198 Mo. 332, 200 S. W. 711; Zimmerman v. Harding, 227 U. S. 489; Sweet v. Bank, 69 Kan. 643.]

"To make them inconsistent, one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other. It is the inconsistency of the demands which makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different." [20 C. J. p. 11.]

Appellant further contends the Government agents had no authority to accept the refund. No authority is cited in support of this proposition. A sufficient answer to this novel contention is that it is presumed, in the absence of a showing to the contrary, that they acted regularly and within the purview of their authority. The letter acknowledging the receipt of the money and the receipt itself were on official forms, indicating that such action was not unusual. Section 4 of the original act (38 Stat. 711)

provides: "The Bureau of War Risk Insurance, with the approval of the Secretary of the Treasury, shall have power to make any and all rules and regulations necessary for carrying out the purposes of this act."

In Silberschein v. United States, 45 S. C. Rep. 69, it is held that the decision of the Director of the Bureau on questions arising under the act are final and not subject to judicial review, unless wholly unsupported by the evidence or is wholly dependent upon a question of law, or is deemed to be clearly arbitrary or capricious. The facts are unlike those in the Dahn case. There the plaintiff had received and retained the full amount allowed under the Compensation Act, and it was held that having received and retained satisfaction under that act he was precluded from prosecuting an action against the Director-General for further compensation for the same injury and cause of action.

The money having been refunded and retained by the Government there is no basis or consideration for the plea of estoppel.

IV. Instruction F is that plaintiff is precluded from recovery by reason of the application for and acceptance of compensation under the War Risk Act and **Vocational Training.** his acceptance of vocational training, maintenance and support from the Government under the Vocational Training Act.

We have considered the first part of this proposition. The clear purpose of the War Risk Act was compensation.

In appellant's brief it said: "By the War Risk Insurance Act (Ch. 293, 38 Stat. L. 711), Congress has provided compensation for any soldier injured in the line of his duty and by the Vocational Rehabilitation Act, Chapter 12, 41 Stat. 1, 158, with later amendments here not material, has provided for vocational training for disabled soldiers at the expense of the Government, with payments for maintenance and support during training similar to the amounts provided for by way of compensa-

tion. By Section 2 of the Act it is provided that compensation shall not be paid during vocational training, compensation automatically ceasing upon the commencement of training, subject to re-establishment upon the termination thereof.''

Section 2 of the Vocational Rehabilitation Act provides that every member of the military or naval forces who, since April 7, 1917, has resigned or been honorably discharged, ''having a disability incurred, increased or aggravated while a member of such forces, or later developing a disability traceable in the opinion of the board to service with such forces, and who, in the opinion of the Federal Board for Vocational Education, is in need of vocational rehabilitation to overcome the handicap of such disability, shall be furnished by the said board, where vocational rehabilitation is feasible, such vocational rehabilitation as the board shall prescribe and provide.''

Appellant's counsel insist that the acceptance of vocational training under this act is a bar to the prosecution of this action because it is provided ''that compensation [under the War Risk Insurance Act] shall not be paid during vocational training . . . subject to re-establishment upon the termination thereof.''

This is a case for the application of the rule of *expressio unius*. Plaintiff had the right to prosecute this action for damages for his personal injuries under the Federal Control Act, *or* accept compensation under the War Risk Insurance Act. The rehabilitation act expressly excludes him from the latter. No legislative intent is manifested to exclude him from the former.

''It is a fair presumption that if the Legislature intended to repeal a statute, it would have done so in express terms, or by the use of words which are equivalent to an express repeal, and courts will not, if it can be consistently avoided, adjudge a statute is repealed by implication. Repugnant statutes necessarily supplant previous ones, but to have that effect they must be clearly repugnant. For unless a legislative intent is expressed

in terms it will not be assumed if any other construction can be given to the later act.'' [Wrightsman v. Gideon, 296 Mo. 214 (headnote), 247 S. W. 135; Folk v. St. Louis, 250 Mo. 116, 136, 157 S. W. 71; 36 Cyc. 1071, 1151 (IV).]

The right of action given plaintiff under the Federal Control and Transportation Acts is unaffected by the Vocational Training Act. The relief given under the latter is in the nature of a gratuity and not on the footing of compensation. It is like the granting of bounties and pensions to the honorably discharged soldiers of the Civil War. There was no error in the refusal of defendant's instructions.

V. Appellant insists the verdict is excessive. The jury heard the witnesses and saw the plaintiff. The law committed to their judgment the determination of the facts and the assessment of plaintiff's damages. Here is a young man in the possession of robust physical health, crippled and incapacitated to perform manual labor, his leg shortened and atrophied and his nervous system shocked and deranged. Considering the permanency and gravity of his injuries, the loss of his earning capacity and his consequent suffering, embarrassment and humiliation, we can see nothing in the verdict to indicate that it was the result of prejudice or passion. In Evans v. General Explosives Co., 239 S. W. 487, where a boy aged seventeen lost his arm at the shoulder, we sustained a verdict for $20,000. He did not suffer derangement of the nervous system as in the instant case. This verdict is large, but it was approved by the learned trial court, and in our opinion is not excessive. Other assignments of error are without merit.

The judgment is therefore affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The opinion of HIGBEE, C., in Division Two is adopted as the opinion of Court in Banc. All of the judges concur, except *Otto, J.,* not sitting.